UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

FILED
DEC 2 1 2005
U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| HELEN J. CONNORS,<br>Plaintiff,<br>v.<br>JOHN E. POTTER,<br>POSTMASTER GENERAL,<br>UNITED STATES POSTAL SERVICE<br>Defendant. | ) | Civil Action No. CA 05 414ML |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND TO DISMISS**

Now comes Defendant in the above captioned action and hereby moves that the Court enter summary judgment in his favor pursuant to F. R. Civ. P. 56. In support of this motion, Defendant avers that there exist meritorious grounds for summary judgment, inasmuch as there are no genuine issues of material fact and Defendant is entitled to judgment as a matter of law.

Defendant further moves that the Court dismiss Plaintiff's common law claim of intentional infliction of emotional distress because the Court lacks subject matter jurisdiction to hear that claim.

In support of these motions, Defendant also submits herewith its memorandum of law, with attached exhibits and Local Rule 12.1 Statement.

Respectfully submitted,

JOHN E. POTTER, JR.
POSTMASTER GENERAL

By HIS ATTORNEY,

ROBERT CLARK CORRENTE
United States Attorney

LISA DINERMAN Bar #2689
Assistant United States Attorney
District of Rhode Island
Fleet Center
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

Dated:

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Motion for Summary Judgment and to Dismiss have been sent, postage prepaid, to Michael D. Coleman, Esq., Greenwich Village, 1050 Main Street, Suite 22, East Greenwich, Rhode Island 02818, this 21st day of December, 2005.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

FILED
DEC 21 2005
U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| HELEN J. CONNORS,<br><br>Plaintiff,<br><br>v.<br><br>JOHN E. POTTER,<br>POSTMASTER GENERAL,<br>UNITED STATES POSTAL SERVICE<br><br>Defendant. | Civil Action No. CA 05 414ML |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS**

## I. INTRODUCTION

Helen J. Connors, ("plaintiff") alleges that the United States Postal Service ("Postal Service" or "defendant") discriminated against her on the basis of her gender when it selected her for the position of Driver Instructor Examiner ("DIE") on March 12, 2004, and then rescinded the selection on March 31, 2004, and selected a male to take the position. Plaintiff also claims that the same actions by defendant resulted in the intentional infliction of emotional distress.

Defendant now move for summary judgment on the claim of gender discrimination because there are no genuine issues of material fact in controversy, and defendant is entitled to judgment as a matter of law. Defendant further moves for dismissal of the claim for the intentional infliction of emotional distress because the Court lacks subject matter jurisdiction over this claim.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS [1]

1. Plaintiff Helen J. Connors ("Plaintiff"), at all times relevant to these proceedings, has been an employee of the United States Postal service, and has been a City Carrier, assigned to the East Bay Carrier Unit, East Providence, R.I.. (*Rule 12.1 Statement* [2], ¶ 1.)

2. An official job posting for a Driver Instructor Examiner position ("DIE") at the Providence Post Office was opened February 13, 2004. The job posting is a document titled *Bargaining Unit Qualification Standard*, and is designated *Document Q5700c Dated April 28, 1995.* ("Q5700c") (*Rule 12.1 Statement,* ¶ 2). The position description for the driver instructor examiner job includes the duty of instructing drivers and operators in the operation of various types of motor vehicles used in the local post office, and specifies the proficiency requirements for the position. Included the special proficiency requirements at § 2.d. is the expectation that before being selected for the position, candidates must be able to qualify on all motor vehicles used in the facility. (*Rule 12.1 Statement,* ¶ 2). Section 2.d states:

> d. Ability to drive safely. Applicants must know and observe safe driving laws and regulations. Applicants must have three years of USPS driving experience. (Before being assigned, promoted, or reassigned to this position, candidate must be able to qualify on all motor vehicles used in that local post office.)

A note to document Q5700c states "Note: The required knowledge, skills and abilities will not, in themselves, be accepted as proof of qualification. The applicant's total record of experience, education and training must show the ability to perform the duties of the position." (*Rule 12.1 Statement,* ¶ 2). The Providence Post office uses tractor trailers, and a commercial driver's license ("CDL") is required to operate a tractor trailer. (*Rule 12.1Statement* ¶ 2).

3. Plaintiff applied for the driver instructor examiner position ("the position") using PS

[1] For purposes of this Motion, the Defendant accepts as true all material facts which are undisputed by Plaintiff.

[2] Rule 12.1 Statement is based on the EEOC Report of Investigation, EEOC Case No. 4B-028-0045-04, which has been renumbered for the purposes of this Statement.

Form 991, Application for Promotion or Assignment. (*Rule 12.1 Statement,* ¶ 3).

4. Human Resources Specialist Debra E. Judge ("Judge"), was the Acting Training Director, and was the official responsible for selecting the successful candidate for the position. Judge evaluated the applicants by completing a "Qualification Rating Sheet for Best Qualified Positions," for the applicants, including Plaintiff. Judge identified the Plaintiff as being qualified for the driver instructor examiner position, (*Rule 12.1 Statement,* ¶ 4) and on March 12, 2004, Judge called Plaintiff and sent her a letter advising her that she had been selected for the position. Plaintiff's selection was also posted on March 22, 2004. *(Rule 12.1 Statement,* ¶ 4).

On March 31, 2004, after realizing that she had made a mistake and had misinterpreted the job requirements, Judge sent Plaintiff another letter, advising her that she did not meet the qualification standards for the driver instructor examiner position. Judge specifically advised Plaintiff that she did not qualify on all the vehicles used at the facility. The reason Judge came to this conclusion was because Plaintiff did not possess a valid Commercial Drivers License. (*Rule 12.1 Statement,* ¶ 4). Judge made this correction after an arbitration award on the identical issue was brought to her attention. *(Rule 12.1 Statement,* ¶ 4). The Arbitration Award made it clear that the DIE position could not be awarded to a person who did not have the qualifications to operate all of the vehicles used at the local post office for which he or she would be training. *(Rule 12.1 Statement,* ¶ 4).

The Arbitration award, issued by Arbitrator Maretta Comfort Toedt, on December 9, 2003, arose from a class action grievance between the United States Postal Service ("USPS") and the American Postal Workers Union ("APWU"). This grievance concerned whether the Postal Service violated the collective bargaining agreement when an unqualified employee was selected for the driver instructor examiner position. The issue at hand was the special

requirement of qualification on all motor vehicles used in the facility, and the selected candidate's inability to operate tractor trailers as well as nine ton vehicles.

The job posting in question contained the following Additional Provisions, identical to the subject provision in the instant case:

> 1. Before being assigned, promoted, or reassigned to this position, candidate must be able to qualify on all motor vehicles used in that local post office. *(Rule 12.1 Statement,* ¶ 4).

Notwithstanding the Agency's arguments to the contrary, the Arbitrator found that the selected candidate was not qualified because he was not able to operate all of the vehicles required by the qualification standards. *(Rule 12.1 Statement,* ¶ 4). In the "Award Summary," Arbitrator Toedt noted:

> The Union established by a preponderance of the evidence that the individual selected for the Driver Instructor and Examiner position was not qualified because he was not able to operate all of the vehicles at the local facility as required by the Qualification Standards. The grievance is sustained. The Postal Service did violate the Collective Bargaining Agreement when it selected Barnes from Bulletin 024-BVQ-95, Job ID # 6738146. The position shall be reposted. *(Rule 12.1 Statement,* ¶ 4).

5. Plaintiff inquired as to whether she would have an opportunity to get a CDL, and was told that she needed to have the CDL before the job was posted. (*Rule 12.1 Statement,* ¶ 5).

6. Of the eight applicants for the position, Joseph Gagnon, a male, was the only candidate who possessed a CDL at the time of the job posting, (*Rule 12.1 Statement,* ¶ 6) and he was awarded the position. Mr. Gagnon has been a tractor trailer driver since 1985. *(Rule 12.1 Statement,* ¶ 6).

7. Joseph E. Gagnon ("Gagnon") was otherwise qualified for the position. He had been employed by the Postal Service as a Motor Vehicle Operator, Tractor Trailer Operator, since July 1995. *(Rule 12.1 Statement,* ¶ 7). He had received ongoing training, including training for

drivers, and on specific vehicles, including 2-ton LHD Orientation, Tractor Trailer and Spotter Tractor Orientation, Seven/Nine ton LHD training, and other vehicle orientation. *(Rule 12.1 Statement,* ¶ 7). Gagnon had also worked as a Safety Captain, *(Rule 12.1 Statement,* ¶ *7)*, and had worked training other employees in his prior position and is also qualified to drive all types of postal vehicles. *(Rule 12.1 Statement,* ¶ 7).

## III. APPLICABLE LAW

### A. Standards for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on a motion for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. (56(c)).

In determining whether summary judgment is appropriate, "the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor." Nicolo v. Philip Morris, Inc., 201 F.3d 29, 33 (1st Cir. 2000). At the summary judgment stage, there is 'no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood.' Greenburg v. Puerto Rico Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). The moving party bears the burden of showing that no evidence supports the nonmoving party's position. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L.Ed. 2d 265 (1986)." Rathburn v. Autozone, Inc., 253 F. Supp. 2d 226, 228-29 (1st Cir. 2003).

"With the Rule 56(c) standard as a guide, this Court is also acutely mindful of the care that must be exercised when considering motions for summary judgment in the employment

discrimination context." See Thomas v. Eastman Kodak Co., 183 F.3d 38, 61 (1st Cir. 1999) (noting that courts should be cautious about *sua sponte* finding non-discriminatory reasons for apparent disparate treatment). Nonetheless, Rule 56(c) compels summary judgment in discrimination cases, even where motive and intent are at issue, if the nonmoving party 'rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.' Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 33 (1st Cir. 2001)(*citing* Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000))." Id. at 229.

Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). United States Steel v. M. DeMatteo Constr. Co., 315 F.3d 43, 48 (1st Cir. 2002). "In this context, 'material' means that 'a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant . . . By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party . . . .'" Navarro v. Phizer Corp., 261 F.3d 90, 93-94 (1st Cir. 2001); McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995) (citations omitted). "Similarly, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." *Id.* The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

In determining whether this burden is met, the Court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable

inferences. Nicolo, *supra,* at 33. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, "the nonmovant must produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56 (e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." In re Spigel, 260 F.3d 27, 31 (1st Cir. 2001)(citation and internal punctuation omitted).

A plaintiff's perception is not evidence. See Pilgrim v. Trustees of Tufts University, 118 F.3d 864, 870 (1st Cir. 1997). "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

## IV. ARGUMENT

In this case, even taking all factual assertions made by Plaintiff to be true, Defendant is entitled to findings and conclusions of no discrimination without a hearing because Plaintiff does not establish a *prima facie* case of discrimination based on gender. Even if Plaintiff were able to establish a *prima facie* case, there are legitimate, non-discriminatory reasons for the Defendant's actions. Finally, the Plaintiff has no evidence that the Defendant's legitimate, non-discriminatory reasons for the action are pretextual. Accordingly, there are no genuine issues of material fact and the Defendant is entitled to summary judgment as a matter of law.

**A. Analysis of Disparate Treatment Claims**

McDonnell Douglas Corp. v. Green provides the analytical framework for proving employment discrimination in cases in which disparate treatment is alleged and no direct evidence of discrimination has been presented. 411 U.S. 792, 802-804 (1973). McDonnell Douglas requires a Plaintiff to first establish a *prima facie* case. To do that, Plaintiff must show that she is a member of the protected group, that she was subjected to an adverse employment action, and that she was treated differently from similarly situated individuals not in her protected group. Keyes v. Secretary of the Navy, 853 F. 2d 1016, 1023 (1st Cir. 1988); Cuddy v. Carmen, 762 F.2d 119, 122 (D.C. Cir.), *cert. denied*, 474 U.S. 1034 (1985).

If Plaintiff establishes a *prima facie* case, Defendant then must articulate a legitimate, non-discriminatory reason for its action in order to rebut the *prima facie* case of discrimination. Finally, Plaintiff must show by a preponderance of the evidence that the Defendant's articulated reason was not the true reason, but was a pretext for unlawful discrimination. She may do this either directly, by showing that a discriminatory reason more likely motivated the Defendant, or indirectly, by showing that the articulated reason is unworthy of credence. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981). The ultimate burden of proving that discrimination took place is on Plaintiff. Burdine, 450 U.S. at 253.

In demonstrating pretext, it is not sufficient to disbelieve the employer; the fact finder must believe the plaintiff's explanation of intentional discrimination. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 519 (1993). Plaintiff must produce some specific evidence to suggest pretext. "[A] reason cannot be proved to be 'a **pretext** *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." Hicks, supra, at 515. See also Hidalgo v. Overseas Condado Ins. Agencies Inc., 120 F.3d 328, 337 (1st Cir. 1997); Smith,

supra, at 16 (holding that the district court correctly interpreted Hicks when it ruled that plaintiff had to adduce evidence sufficient to support a finding of the employer's stated reason was not only a **pretext,** but that it was a **pretext** for illegal discrimination). At this stage, "the *facts* that comprised plaintiff's prima facie case may be considered, but the inference of discrimination originally attributable to those facts no longer pertains." Sanchez v. Puerto Rico Oil Co., 37 F.3d 712, 720 (1st Cir. 1994). "The plaintiff may rely on the same evidence to prove **pretext** and discrimination, but the evidence must be sufficient for a reasonable factfinder to infer that the employer's decision was motivated by discriminatory animus." Smith, 40 F.3d at 16. Conclusory allegations of pretext are insufficient to create an issue of fact. Id. Plaintiff's burden is to show "both that the reason was false, and that discrimination was the real reason." Hicks, 509 U.S. at 515.

**B. Failure to Promote As Disparate Treatment.**

Plaintiff claims that she was not promoted to Driver Instructor Examiner because of her gender. "Her failure to promote claims rest on the premise that the employer treated the Plaintiff differently than men." See Rathburn v. Autozone, Inc., 361 F.3d 62, 71 (1st Cir. 2004). The nature of her claim results in a need to prove slightly different elements than a generic disparate treatment claim, as explained in Rathburn, id at 71-73:

> The core inquiry in such disparate treatment cases is whether the defendant intentionally discriminated against the plaintiff because of her gender. Cumpiano v. Bianco Santander, 902 F.2d 148, 153 (1st Cir. 1990). Direct evidence of discriminator intent is not required. U.S. Postal Service Bd. of Govs. v. Aikens, 460 U.S. 711, 716-17, 75 L.Ed. 2d 403, 103 S. Ct. 1478 (1983). Instead, a plaintiff may apply the aforementioned burden-shifting framework. If she follows that path, the plaintiff must first establish a *prima facie* case of gender discrimination. McDonnell Douglas Corp., *supra at 802.* The elements of the plaintiff's prima facie case vary according to the nature of her claim. In a failure-to-promote claim, for example, those elements are that the plaintiff (i) is a member of a protected class who (ii) was qualified for an open position for which

> she applied but (iii) was rejected (iv) in favor of someone possessing similar qualifications. Gu v. Boston Police Dep't, 312 F.3d 6, 11 (1st Cir. 2002).
>
> That modest showing suffices to raise an inference of intentional discrimination. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-54, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981). The burden of production then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment decision(s). Id at 254-56. 'So long as the employer proffers such a reason, the inference raised by the plaintiff's *prima facie* case vanishes.' Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 7 (1st Cir. 1990). At that juncture, the burden of production reverts to the plaintiff, who must then proffer evidence that she was treated differently because of her sex. See Burdine, 450 U.S. at 256, 67 L. Ed. 2d 207, 1010 S.Ct. 1089, This evidence, viewed in the light most favorable to the plaintiff, must be sufficient 'to prove . . . that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination.' Id. at 253, 67 L. Ed. 2d 207, 101 S. Ct. 1089. To this end, 'many veins of circumstantial evidence . . . may be mined. Mesnick, 950 F.2d at 824. These include – but are by no means limited to – evidence of differential treatment, evidence of discriminatory comments, statistical evidence and comparative evidence. See id. Rathburn v. Autozone, Inc., 361 F.3d 62, 71-2 (1st Cir. 2004).

Plaintiff alleges that she was discriminated against on the basis of her gender because a man got the position that she had applied for. She asserts that the decision was discriminatory for several reasons. She believes that she did not get the job "because some people do not want a female to get a job in a male dominated field," and she believes that nepotism was a factor because an administrator who assisted in the selection process wanted her brother-in-law to get the job. Plaintiff also states that others who had worked as DIE's at the Providence Post Office were not required to teach on the tractor trailers, so the requirement that she hold a commercial driver's license and be able to operate the tractor trailers was not a real requirement, but only a subterfuge used to give "her job" to a man.

Plaintiff is clearly a member of a protected class because she is female, and has suffered an adverse employment action. However, she is unable to satisfy the remaining prongs of the test articulated in Rathburn, *supra.* To prove her case she must show that "she was qualified for

an open position," and that the employer rejected her "in favor of someone possessing similar qualifications." Rathburn, *supra,* at 71. She is unable to do this because she was not qualified for the position and the person who was chosen was qualified for the position.

There were eight applicants for the position, and the successful candidate, Joseph Gagnon, a male, was awarded the position because he was the only candidate qualified to operate all of the vehicles used at the Providence Post Office as he was the only applicant with a CDL. (Rule 12.1 Statement, ¶¶ 2 and 6). Plaintiff did not possess a CDL at the time she applied for the job. In addition, there were six other men who applied and who did not have CDL's and who did not get the job.

Plaintiff's attempts to provide reasons why her non-selection must be based on her gender are unavailing. Plaintiff asserts "I feel being a woman was a factor of discrimination in this complaint. I feel that certain people were not happy that a woman was chosen for the first time to become a full time driver instructor. I was chosen over other male candidates in a male dominated field." (Rule 12.1 Statement, ¶ 8).

Plaintiff's "feeling" is unsupported by any facts, or even by any details of who the "certain people" may be. In fact, her statement contains the seeds of its own unraveling. She notes that she was "chosen over other male candidates." The record shows that a female human resources specialist selected Plaintiff over seven male candidates for the position. However, the decision was reversed when the same female determined that a mistake had been made and that Plaintiff did not have the qualifications for the job. The fact that Plaintiff had been selected over the male candidates demonstrates that discrimination was not afoot when the decision was made. But for the mistake about qualifications, Plaintiff would have had the position, notwithstanding anyone's opinion that the job should go to a male.

Likewise, Plaintiff suggests that nepotism played a role in the awarding of the position. She suggests that Mr. Gagnon must have gotten the job because he is related to one of the Human Resources Specialists who was part of the selection process. She asserts "Mikki Palardy is the Human Resource Specialist and works in the personnel office. She is in charge of job posting, job bidding and she received the 991's. I recently learned her brother-in-law is Joe Gagnon, the person they gave my job to!" (Rule 12.1 Statement, ¶ 9).

Ms. Palardy had a ministerial role in the selection process. Michelle "Mikki" Palardy, a Human Resources Specialist in Providence, R.I., stated that that her "involvement in selecting a candidate for the position of Driver Instructor Examiner consisted of creating a job slot in the HRIS computer system, adding the job slot to the posting, collecting all PS Form 991's – Application for Promotion or Assignment which were submitted by the candidates, and then submitting the PS Form 991's and PS Form 1796B-Qualification Rating Sheet for Best Qualified Positions to the selecting official." (Rule 12.1 Statement, ¶ 10) Ms. Palardy had other administrative duties when the candidate was selected, and states "I was not involved in the selection of a candidate nor was I responsible for the decision made." (Rule 12.1 Statement, ¶ 10).

That a relative had a ministerial role in the administration of the job selection process by itself provides no support for Plaintiff's discrimination claim. Even if it were true and Ms. Palardy were able to influence the decision making process, such a fact does not provide Plaintiff with evidence of discrimination. It would prove nepotism, or favoritism, and bad management, but it would not prove that Plaintiff did not get the job because of her gender.

Plaintiff also asserts that since others who have worked in the DIE position did not have to train drivers on the tractor trailers, requiring her to be able to provide this training must be a

subterfuge to keep her from getting the job. Plaintiff's conclusion is incorrect, and is directly contrary to the facts. It does not matter whether the trainer will have to train on all vehicles or not. What matters is that an arbitration decision that binds the Postal Service compels the Postal Service to appoint only qualified people to DIE positions and to eliminate candidates who are not able to operate all of the vehicles used in the local post office. The failure to do so violates the Collective Bargaining Agreement.

There is no evidence that there was any misconduct in the selection process, and none of Plaintiff's beliefs or speculations proves discrimination. Taken together, Plaintiff's feelings and suspicions about why she did not get the job are just those sorts of statements that the court in Pilgrim warns against. Pilgrim, *supra* at 870. ("A plaintiff's perception is not evidence.") "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Plaintiff is resting on conclusory allegations, based on speculation, and which are not supported by evidence.

**C. Even if Plaintiff can make a prima facie case of gender discrimination, Defendant has a legitimate, non-discriminatory reason for the action.**

Plaintiff's lack of a CDL was Defendant's legitimate, and non-discriminatory reason for non-selection. "An **applicant must be qualified for the position** sought. "Congress did not intend by **Title VII** . . . to guarantee a job to every person regardless of qualifications. In short, the Act does not commend that any person be hired simply because he was the subject of discrimination." McDonnell Douglas, 411 U.S. at 800, 93 S. Ct. at 1823 (quoting Griggs v. Duke Power Co., 401 U.S. 424, 430-31, 91 S. Ct. 849, 853, 28 L. Ed. 2d 158 (1971)); see also

Lewis v. MacMillan-Bloedel, Inc., 670 F. Supp. 330, 335-36 (S.D. Ala. 1986) (plaintiff did not establish a prima facie case under McDonnell Douglas because he did not show he possessed the minimum qualifications for the position he sought).

In fact, the job posting clearly required that "Before being assigned, promoted, or reassigned to this position, candidate must be able to qualify on all motor vehicles used in that local post office." (Rule 12.1 Statement, ¶ 2) This requirement removes any doubt about whether driver instructors in Providence have to have a CDL. Plaintiff does not dispute that tractor trailers are used in the local post office and that the driver instructor must be "able to qualify" on that equipment. Plaintiff did also concedes that she did not have the CDL and the successful applicant does. Under the terms of the job announcement the Plaintiff is not qualified for the job and it was an error to tell her that she had the job. The error was understandable, and it is equally understandable that Plaintiff is unhappy with the decision. That does not change the fact that in order to operate all of the vehicles used at the local post office, which in this case includes tractor trailers, one must be licensed to operate all of the vehicles. Whether the instructor is called upon to actually do the training or not is irrelevant.

While Defendant admittedly made a mistake when it initially selected Plaintiff, it was an error that was corrected as soon as it became known, and Plaintiff has failed to produce any evidence that the decision was based on a discriminatory animus.

**D. Plaintiff Cannot Show Pretext**

Where discrimination is alleged and Defendant articulates a legitimate, nondiscriminatory reason for its actions, the legal analysis may proceed directly to a determination of whether or not Plaintiff has satisfied her burden of showing pretext. United States Postal Service v. Aikens, 460 U.S. 711, 713-14 (1983) *See also* Molloy v. Blanchard, 115

F.3d 86, 91 (1st Cir. 1997) ("the plaintiff must make out a *prima facie* case of discrimination, the employer must then come forward with some non-discriminatory justification, and the plaintiff is finally given the opportunity to convince the trier of fact that the justification was pretextual and the real reason was discriminatory.") Plaintiff has offered no proof that the articulated legitimate, non-discriminatory reasons for Defendant's actions were pretextual. Her speculation that others preferred a male in the job, or that nepotism played a role in her non-selection, does not demonstrate that her lack of the required license was the real reason that she did not get the job. Since Plaintiff has failed to establish a *prima facie* case of gender discrimination and has not offered evidence that Defendant's legitimate, non-discriminatory reasons for its actions are pretextual, Defendant is entitled to summary judgment.

**2.** Plaintiff's Claim for Intentional Infliction of Emotional Distress Should Be Dismissed Because It Is Preempted by Title VII

In her "Second Cause of Action," Plaintiff repeats the factual allegations supporting her Title VII claims as her "First Cause of Action," and alleges that the same facts support recovery on the common law theory of intentional infliction of emotional distress. However, as this claim flows from the alleged federal workplace discrimination, it is precluded by Title VII. Title VII provides the exclusive pre-emptive administrative and judicial scheme for redress of claims of discrimination in federal employment. Brown v. General Services Administration, 425 U.S. 820 (1976). In Brown, the Supreme Court held that because Congress' intent in enacting § 717 of Title VII was "to create an exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination," § 717 "provides the exclusive judicial remedy for claims of discrimination in Federal Court." 425 U.S. at 835. The Supreme Court made clear that artful pleading could not be employed to bypass Title VII "by the simple expedient of

putting a different label on the pleadings." Id. at 833. Federal courts have repeatedly followed Brown in holding that sex discrimination and related retaliation claims made by federal employees based on various statutes or common law are preempted by Title VII. See, e.g., DeGrace v. Rumsfield, 614 F.2d 796, 808, (1[st] Cir. 1980)(barring §1981 claim); Colon v. FDIC, 723 F. Supp. 842, 845, (D. P.R. 1989) (Executive Order 11748); Nanartonis v. United States of America, 1986 U.S. Dist. LEXIS 21111 (D. Mass. 1986); Hennessey v. Equal Employment Opportunity Commission, 1986 U.S. Dist. LEXIS 21946 (D. Mass. 1986); DiPompo v. West Point Military Academy, 708 F. Supp. 540, 544 (S.D.N.Y. 1989), aff'd, 960 F.2d 326 (2d Cir. 1992) (dismissing 42 U.S.C. § 1985 claims as well as New York State statutory claims because of Title VII preemption). As such, the claim in the Plaintiff's "Second Cause of Action" must be dismissed.

## V. CONCLUSION

Plaintiff has offered no evidence that similarly situated employees were treated differently and, thus, has not established a *prima facie* case of discrimination. She has also failed to demonstrate that any of the actions of which she complains were related to her gender. Even if Plaintiff had established a *prima facie* case of discrimination, she has not offered evidence that the legitimate, non-discriminatory reasons for its actions articulated by the Defendant were pretextual. Thus, Defendant is entitled to summary judgment.

Respectfully submitted,

JOHN E. POTTER, JR.
POSTMASTER GENERAL

By His Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

Lisa Dinerman Bar #2689
Assistant U.S. Attorney
District of Rhode Island
Fleet Center
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
401 709-5000
401 709-5017 (Fax)

Dated: December, 21st, 2005

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Memorandum of Law and accompanying exhibits was sent, postage prepaid, this 23rd day of December, 2005, to Michael D. Coleman, Esq., 1050 Main Street, Suite 22, East Greenwich, RI 02818.