**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

**HELEN J. CONNORS,**

**Plaintiff,**

**V.** **Civil Action Number CA 05 414ML**

**JOHN E. POTTER,**
**POSTMASTER GENERAL,**
**UNITED STATES POSTAL SERVICE**

## PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Now comes the Plaintiff, Helen J. Connors, and objects to Defendant's Motion For Summary Judgment for the reasons set forth in the accompanying Memorandum of Law.

In support thereof, Plaintiff relies on the attached Local Rule 56 Statement and the exhibits previously filed by the Defendant.

**WHEREFORE,** Plaintiff prays that Defendant's Motion For Summary Judgment be denied.

Respectfully submitted,

PLAINTIFF

HELEN J. CONNORS
By her Attorney,

Michael D. Coleman (#2021)
1050 Main Street Suite 22
East Greenwich, RI 02818
(401)885-8887 Fax (401)885-6082

**CERTIFICATION**

I hereby certify that a copy of the within Objection was sent, postage prepaid, to Lisa Dinerman, Esq., Assistant U.S. Attorney, District of Rhode Island, Fleet Center, 50 Kennedy Plaza, 8th Floor, Providence, R.I. on the 12th day of January, 2006

Michael D. Coleman (#2021)

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

**HELEN J. CONNORS,**

**Plaintiff,**

**V.** **Civil Action Number CA 05 414ML**

**JOHN E. POTTER,**
**POSTMASTER GENERAL,**
**UNITED STATES POSTAL SERVICE**

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. Introduction

On June 10, 2004 Plaintiff, Helen J. Connors, filed a formal EEOC Complaint alleging that the United States Postal Service (hereinafter "the Agency") had discriminated against her on the basis of gender. Plaintiff objects to Defendant's Motion For Summary Judgment and requests that said motion be denied.

## II. Material Facts

Plaintiff Helen Connors bid for and was awarded a Level 6 Driver Instructor and Examiner position after being determined the "best qualified" among eight (8) applicants following a personal interview. Nineteen days after having been awarded the position she received a letter which asserted that she did not meet the qualifications necessary for the position in that she did not **currently** possess a Commercial Drivers License (CDL). When she inquired whether she would have the opportunity to get a CDL she was told that she needed to have the CDL before the job was posted. ROI, SI p.5, Aff. A. The position was then awarded to Joseph Gagnon, a male, and the only applicant in possession of a CDL.

The Job Posting with regard to this position was Job Posting BQ0401 which opened on 2/13/04 and closed on 2/23/04. The "Bargaining Unit Qualification Standard for "Driver Instructor and –Examiner" is Document Q5700c and neither the posting nor the qualification standard document lists the requirement of a CDL. The Agency asserts: "A successful candidate for the position is required to be qualified to operate all postal vehicles used at the local post office. The Providence Post Office uses tractor trailers, which a CDL is necessary to drive these vehicles. ROI, IS p.7 and EX.3." Agency's Statement of Undisputed Facts, Number 10). The language of Document Q5700c sets forth the Special Proficiency Requirements for the position in Section 2 (d):

> d. Ability to drive safely. Applicants must know and observe safe driving laws and regulations. Applicants must have three years of USPS driving experience. (Before being assigned, promoted or reassigned to this position, **candidate must be able to qualify** on all motor vehicles used in that local post office.) ROI, Ex. 3.

The Note to Document Q5700c states: "The required knowledge, skills and abilities will not, in themselves, be accepted as proof of qualification. The applicant's total record of

experience, education and training must show the ability to perform the duties of the position." A review of the Employee Training History Reports for the Plaintiff and Joseph Gagnon reveals that although the Plaintiff was not trained on tractor trailers at the time, she was trained on the use of the Passenger Van, 2-ton, ¼ ton and the LLV, vehicles on which Mr. Gagnon had not been trained . LLVs compromise 95% of the Postal Fleet and the job in question involves almost exclusively training on LLVs. In addition the Plaintiff had taken Driver Training & Examiner training and Mr. Gagnon had not.

The travel of the events leading up to the letter rescinding the award of the position to the Plaintiff should be fully explored through the process of Discovery. Further investigation of those events would be critical in answering the question why the Plaintiff was denied the right to qualify for a CDL but Mr. Gagnon was afforded an opportunity to qualify on vehicles for which he was not certified. Upon information and belief, Plaintiff met with NALC steward Joan Crugnale on April 5, 2004 who informed Plaintiff that the job had been taken away because of a grievance filed by the APWU. Apparently, a grievance was threatened by the President of the APWU when the job was awarded to Plaintiff. Plaintiff inquired as to Mr. Gagnon's lack of qualifications in a conversation with Carol Deschanes, Mgr. Training: "She inquired to Bob Miles. Carol told me that Bob Miles said: 'They looked into that loophole. It'll be easier for him to be trained than for me to get my CDL. It would be too expensive. Like $300 dollars…' " ROI, Formal Complaint, p.2. The conclusion that it would be more difficult for a woman to qualify for a CDL driving tractor trailers than for a man to qualify on three other types of vehicles is discussed infra., as is the absurd suggestion that $300 was too expensive for

a woman. As noted in her Formal Complaint the Plaintiff obtained a CDL permit for the state of Rhode Island. ROI, Formal Complaint, p.3.

James White is a former USPS Driving Instructor who covered the district of the Cape and the Islands into southeastern Massachusetts, all of Rhode island to the Connecticut border, a position he held from January 1998 until his retirement in October 2003. Upon information and belief it is Mr. White's position that was being filled as it had been vacant. With regard to that period of almost seven years Mr. White states:

> "In all that time, the drivers training department never trained anyone on a tractor trailer as we let the trained tractor trailer drivers do that themselves. The policy was they drive them all the time so they should be the one to train the tractor trailer drivers. **I did not have a CDL nor did anyone I knew have a CDL that was a current driver instructor**.
>
> I assisted and taught in four or five driver training instructor classes and never did the subject of having a CDL come up or did we ever teach anything regarding a CDL in the class room portion of instruction. Most of those who came to use as AD-Hoc's also did not have a CDL.
>
> Any job postings that were made or requested during that time also did not or were not posted stating that a CDL was required for the position of driving instructor. In the seven years I was there the current full-time driving instructor only did a handful of CDL students and those times were emergencies where no one else was available.
>
> There is also no part of the driving training program that focuses on tractor trailers and CDL requirements or performance. The program is totally focused on driving LLV (long Life Vehicle), passenger cars, 2-tons and vans. The program focuses on these vehicles 100-percent." ROI, Exhibit 11.

Edward Callahan has served as an ad-hoc driving instructor for the past 3-1/2 years. Mr. Callahan has stated:

"During that time I never trained anyone in a vehicle larger than a 2-ton truck. Ninety-nine percent of the road training was done on L.L.V. trucks and on rural carrier private vehicles. ROI, Exhibit 12.

After Plaintiff was told that she was not qualified for the position she was asked to cover for Mr. White who was on vacation due to the fact that she was a qualified and experienced Driver instructor and Examiner. Plaintiff taught classroom and road work for new and career employees from April 5 to April 23rd , May 17, and May 24th through the 26th, ROI, Formal Complaint, p.3.

## III. <u>**Standard of Review in Considering a Motion For Summary Judgment**</u>

.

Summary judgment, a drastic remedy, should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. <u>International Ins. Co. v. Metro. St. Louis Sewer Dist.</u>, 938 F. Supp. 568 (E.D. Mo. 1996). Summary judgment is appropriate <u>only when</u> "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits…show that <u>there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law</u>." <u>Grubb v. KMS Patriots, L.P.</u>, 88 F. 3d 1 ,3 (1ct Cir. 1996)(emphasis added); Fed. R. Civ. P. 56(c). The trial court may search for the existence of factual issues but may not determine them, <u>Steinberg v. State,</u>

427 A. 2d338 (R.I. 1981); nor may the trial court assess or weigh the credibility of the evidence. Doyle V. State, 122 R.I. 590, 411 A. 2d 907 (1980). In reviewing a motion for summary judgment, a court is obliged to view the facts in a light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor. Fennell v.. First Step Designs, Ltd., 83 F. 3d 526, 534 (1st Cir. 1996); National Credit Union Admin. Bd. v. Regine, 795 F. Supp. 39, 62 (D.R.I. 1992). At the summary judgment stage, a court should ask itself whether the plaintiff could prevail if a jury or judge believed the plaintiff's version of the facts and disbelieved the defendant's version. Stepanischen v. Merchants Despatch Transp. Corp., 72 F. 2d 922, 929 (1st Cir. 1983). Accordingly, summary judgment will not lie if the dispute about a material fact is "genuine," that is, the evidence is such that a reasonable jury could return a verdict for the non-moving party when construing all evidence in the record and inferences in favor of that party. Anderson v. Liberty Lobby, Inc., 477 U. S. 247, 248 (1986). Because genuine issues of material fact exist, when viewing the evidence in a light most favorable to the Plaintiff, Defendant's motion should be denied.

## IV. Argument

Plaintiff herein is entitled to findings and a conclusion of sexual discrimination by proving disparate treatment through both direct and circumstantial evidence. A plaintiff in a Title VII action is not required to provide direct proof of disparate treatment. United

States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 714 (1983). In most disparate treatment cases, intent to discriminate is established inferentially, through circumstantial evidence. In such cases the initial step in proving intent is to make out a prima facie case of discrimination. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). A plaintiff must only provide sufficient evidence from which a legal inference of discrimination can be drawn; if such inference is left unexplained, it can be concluded that the adverse action complained of was more likely than not motivated by unlawful bias. These remarks were made by one involved in the employment decision, at or around the time the decision was made, and obviously were related to the decision making process thus establishing a link between the bias and the adverse action.

## A. Plaintiff Has Alleged Facts Sufficient To Establish Direct Evidence of Gender Discrimination

Direct evidence of discriminatory motive may be any written or verbal policy or statement made by a respondent or respondent official that on its face demonstrates a bias against a protected group and is linked to the complaint of adverse action. In Grant v. Hazelett Strip Casting Corp., 880 F. 2d 1564, 1569 (2d Cir. 1989) the court found direct evidence of age discrimination where the company president said in a memo that he wanted a "young man...between 30 and 40 years old," and verbally that "I want a young man and that's what I want and that's what I am going to have." Evidence that action was

taken on the basis of stereotyped attitudes about the charging party's class would also constitute direct evidence of discrimination. An employer who acts on the basis of belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender. Price Waterhouse v. Hopkins, 490 U.S. 228, 250 (1989).

Plaintiff asserts that her job was taken away after she was chosen to be the first woman chosen to fulfill the position of full time driver instructor examiner in a male dominated field. ROI, Investigative Summary, p. 6. Plaintiff was told that Bob Miles, a male, said that it would be easier for Joseph Gagnon, a male, to be trained on the vehicles for which he was trained than it would be for the Plaintiff, a female, to get her CDL. ROI, Formal Complaint, p.2. The Agency's agent's asserted justification for preferring a male constitutes a stereotypical attitude towards gender, especially in light of the fact that former USPS Driving instructor never held a CDL. ROI, Exhibit 11.

The purported statement of Bob Miles that it would bee too expensive for Plaintiff to get a CDL: "Like $300 dollars" (ROI, Formal Complaint, p.2) is absurd on its face and reflects a stereotyped attitude as to the ability of a woman to pay that sum. Bob Miles reportedly opined that the Plaintiff needed "2 years of CDL driving experience." ROI, p.2. The record is devoid of any such requirement and the recitation of the non-existent requirement is further evidence of discriminatory animus on the part of the Agency's agent.

Direct evidence is not limited to evidence from which no inferences need be drawn; rather it is evidence that relates to actions or statements of an employer reflecting a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of. Caban-Wheeler v. Elsea, 904 F. 2d 1549 (11th Cir. 1990). At the very

least there exists a genuine issue of material fact regarding Plaintiff's direct evidence of discrimination. Where there is direct evidence of discrimination there is no need to apply the McDonnell Douglas framework for drawing an inference of discrimination from circumstantial evidence, discussed below.

## B. Plaintiff Has Alleged Facts Sufficient to Establish Circumstantial Evidence of Gender Discrimination

The Supreme Court created a template for establishing a case by inference in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) where it stated that a plaintiff can establish a prima facie case of discrimination by showing:

1. (s)he belongs to a protected group under Title VII;
2. (s)he applied and was qualified for a job for which the employer was seeking applicants:
3. despite his/her qualifications, (s)he was rejected; and
4. (4) after his/her rejection, the position remained open and the employer continued to seek applications from persons of Plaintiff's qualifications.

The Supreme Court qualified these four elements by stating that they may vary depending upon the facts in each case. 411 U.S. at 802 n.13. Similarly, the Court in Burdine, supra, explained that the paradigm set forth in McDonnell Douglas "is not inflexible" and that "(t)he facts necessarily will vary in Title VII cases..." 450 U.S. at 253 n.6. Citing McDonnell Douglas, the Court further stated that the proof required of a plaintiff under the formula set out in that case is not "necessarily applicable in every respect in differing factual situations." Burdine, 450 U.S. at 254 n.6. The Agency has conceded that the Plaintiff is a member of a protected class because she is female and has suffered an adverse employment action. The dispute centers around whether Plaintiff was treated differently from similarly situated individuals not in her protected group.

Plaintiff lacked a CDL: Joseph Gagnon lacked training on the LLV vehicles nor was he knowledgeable of all postal vehicles. ROI, Formal Complaint, p.2. Joseph Gagnon was given the paid time to be taught on the vehicles after the position was taken from Plaintiff. The letter rescinding Plaintiff's job stated the reason: "Specifically you did not qualify on all vehicles used at the local post office." ROI. Exhibit 8. Plaintiff was treated differently from similarly situated individuals (Joseph Gagnon) not in her protected class in that she was not afforded the opportunity to qualify on all vehicles by getting a CDL.

James White filled the position of trained/certified driving instructor for almost seven years and never had a CDL. ROI, Exhibit 11. Edward T. Callahan held an ad-hoc driving instructor position for 3-1/2 years and never trained anyone on a vehicle larger than a 2-ton vehicle (which Plaintiff was qualified for). Plaintiff has been treated differently from these two similarly situated males.

The Plaintiff having established a prima facie case through the four-part approach set out in McDonnell Douglas she will have raised an inference that the employer acted with a discriminatory motive. That is because a prima facie showing is "simply proof of actions taken by the employer from which we infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions bottomed on impermissible considerations." Furnco Construction Co. v. Waters, 438 U.S, 567, 579-80 (1978). The prima facie_showing establishes a presumption of discriminatory motive which the employer may rebut by articulating a legitimate nondiscriminatory reason for its action.

### C. Plaintiff Has Alleged Sufficient Facts To Rebut the Agency's Purported Legitimate Reason For Its Action

Where an employer succeeds in articulating a legitimate nondiscriminatory reason for its action the Plaintiff may still prevail by demonstrating that the employer's articulated reason was not the true reason for the challenged employment decision and is, in fact, a pretext.. Plaintiff may make this showing "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. Aikens, supra at 716, quoting Burdine, 450 U.S. at 256. The Plaintiff may prevail **either** by proving that the discrimination more likely motivated the decision **or** that the employer's articulated reason is unworthy of belief. Bruno v. W.B. Saunders Co., 882 F.2 760, 766 (3s Cir. 1989(simply proving defendant's reason is enough) cert. denied sub nom., CBS,

Inc. v. Bruno, 493 U.S. 1062 (1990). Once the fact finder is satisfied that the proffered reason for the challenged action was not the true reason the Plaintiff need not also prove intentional discrimination as such an approach "unjustifiably multiplies the plaintiff's burden." MacDissi v. Valmont Industries, 856 F. 2d 1054, 1059 (8th Cir. 1988. The EEOC has **rejected** the position of courts which have held it is not enough to prevail for a plaintiff to disprove the employer's articulated reason.

The Agency's purported legitimate reason is that Plaintiff did not qualify on all vehicles at the local post office. ROI, Exhibit 8. Neither did Joseph Gagnon; however, unlike the Plaintiff he was afforded paid time to become qualified. The Agency's position is disingenuous – the Plaintiff 's job was rescinded because she "did not qualify on all vehicles" when Document Q5700c specifically states the "candidate must be **able** to qualify on all motor vehicles used in that local post office.: ROI, Exhibit 3. Plaintiff, like Joseph Gagnon, was able to qualify on all vehicles. By awarding the position to Joseph Gagnon under these facts and circumstances, the Agency's asserted reason is demonstrably untrue, supporting an inference of discrimination. Pilditch v. Bd of Educ. of City of Chicago, 3 F. 3d 1113, 1116 (7th Cir. 1993).

The Agency asserts that its hands are tied because of an arbitration decision and that it was mandated to award the position to the most qualified person who has all the qualifications. Joseph Gagnon did not have all the qualifications until **after** he was awarded the job. "yet after they gave the position to Joseph Gagnon he was given the time to be trained." ROI, Formal Complaint, p.3. The Agency relies on the arbitration decision for the proposition that the person receiving the job had to be qualified **at the**

**time he or she received the job;** nonetheless the state of the record is that Joseph Gagnon was allowed to take paid time from work to become qualified after receiving the position. Specialist Debra Judge "explained that Joseph Gagnon applied for the position in February 2004 and was awarded the position because he was the only candidate, among the top 4, who possessed a CDL." ROI, Investigative Summary, p. 15. Whether or not the cited arbitration decision is applicable to the facts of this matter the record is clear that the Agency did not follow its own interpretation of the arbitration decision. Clearly , the Agency's purported reliance on the arbitration decision is a pretext.

In a racial discrimination disparate treatment case involving circumstantial evidence, the Supreme Court held in St.Mary's Honor Center v. Hicks, 113 S. Ct. 2742 (1993) that the fact finder is not required, **as a matter of law**, to find discrimination whenever it finds the employer's explanation for its action is not credible. However, a fact finder's disbelief of an employer's articulated reasons, coupled with elements of a prima facie case, may suffice to show intentional discrimination. Under Hicks, the trier of fact may conclude that a prima facie case, coupled with a non-credible justification from the employer, is sufficient to support a finding of discrimination. (The Court thus **rejected** the "pretext plus" rule some courts had imposed requiring plaintiffs to prove not only that the employer's reason was false but also some additional affirmative evidence of intentional discrimination.).

The Agency's non-credible explanation of the reasons for its action in rescinding the Plaintiff's job and awarding it to Joseph Gagnon, when considered in the light of Plaintiff's prima facie case as set forth above, support a finding of discrimination.

## V. CONCLUSION

**WHEREFORE,** THE Plaintiff respectfully prays that the Defendant's Motion For Summary Judgment be denied.

PLAINTIFF
HELEN J. CONNORS
By her Attorney,

Michael D. Coleman (#2021)
1050 Main Street Suite 22
East Greenwich, RI 02818
(401)885-8887 Fax (401)885-6082

## CERTIFICATION

I hereby certify that a copy of the within Memorandum was mailed, postage prepaid, to Lisa Dinerman, Esq., Assistant U.S. Attorney, District of Rhode Island, Fleet Center, 50 Kennedy Plaza, 8th Floor, Providence, R.I. on the ___ 12th day of January , 2006.

Michael D. Coleman (#2021)